IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

GEORGE MARK GOWEN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 5:15-cv-41

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Richard Furcolo ("the ALJ" or "ALJ Furcolo") partially denying his claim for a period of disability and disability insurance benefits. Plaintiff urges the Court to reverse the ALJ's decision, in part, and award him benefits for the dates on which he alleges his disability began or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.

### BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on August 21, 2012, alleging that he became disabled on November 30, 2009, due to gout, cervical myelopathy, severe neck-related arthritis, chronic pain, and severe damage to his shoulder, bilateral wrist, and hand, caused by gout. (Doc. 15, p. 2.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On June 10,

2014, ALJ Furcolo conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified in Waycross, Georgia, while the ALJ presided in Savannah, Georgia. James Waddington, a vocational expert, also appeared at the hearing. ALJ Furcolo found that Plaintiff was disabled within the meaning of the Act as of September 26, 2011, but that Plaintiff was not disabled as of November 30, 2009, the alleged date of onset. (Id. at p. 3.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id.)

Plaintiff, born on June 19, 1955, was fifty-nine (59) years old when ALJ Furcolo issued his final decision. (Id. at p. 13.) He has a bachelor's degree in civil engineering. (Id.) Plaintiff's past relevant work experience includes employment as the vice president of a family-owned oil company. (Id.)

## DISCUSSION

### I. The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently

2

severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of November 30, 2009, through the date of ALJ Furcolo's decision on July 25, 2014. (Doc. 9-2, p. 18.) At Step Two, the ALJ determined that, as of the alleged onset date of November 30, 2009, Plaintiff had gout, arthritis, and obesity, conditions considered "severe" under the Regulations. (Id.) As of the established onset date of September 26, 2011, the ALJ determined that Plaintiff suffered additionally from degenerative disc and joint disease of the cervical spine with radiculopathy and myelopathy. (Id.) However, the ALJ determined that Plaintiff's

3

medically determinable impairments did not meet or medically equal a listed impairment. (Id. at p. 19.) The ALJ found that, prior to September 26, 2011, Plaintiff had the residual functional capacity to perform light work, except with the following limitations: no more than frequently operating hand controls, reaching overhead, and fingering bilaterally; no more than occasionally climbing ladders, working at unprotected heights, working in extreme cold, and being exposed to vibrations; and no more than frequently crawling.. (Id.) The ALJ further found that, beginning on September 26, 2011, Plaintiff had the residual functional capacity to perform light work, except with the following limitations: sitting less than six hours in an eight-hour work day; standing and walking less than two hours in an eight-hour work day; no more than frequently operating hand controls, reaching overhead, handling, and fingering bilaterally; no more than occasionally climbing ladders, working at unprotected heights, and being exposed to vibrations; and no more than frequently crawling. (Id. at p. 21.) At the next step, ALJ Furcolo noted, prior to September 26, 2011, Plaintiff was capable of performing his past relevant work as a company vice president. (Id. at p. 22.) However, the ALJ concluded that, as of September 26, 2011, Plaintiff was unable to perform his past relevant work. (Id.) The ALJ then determined at the final step that Plaintiff does not have work skills that are transferable to other occupations within his residual functional capacity. The ALJ concluded that Plaintiff is unable to perform any jobs existing in significant numbers in the national economy. (Id. at p. 23.) Ultimately, ALJ Furcolo concluded that Plaintiff was entitled to disability benefits and that he became disabled on September 26, 2011.

## II. Issues Presented

Both Plaintiff and the Commissioner agree that Plaintiff is presently disabled. Therefore, the only issue before the Court is the date on which Plaintiff's disability began. Plaintiff

contends he became disabled on November 30, 2009, whereas the ALJ concluded Plaintiff became disabled on September 26, 2011. Plaintiff argues that the ALJ erred in reaching that conclusion because he failed to properly credit two of Plaintiff's treating physician's opinions. Specifically, Plaintiff argues that the ALJ failed to properly credit his treating physician's opinions that, as of November 30, 2009, Plaintiff was unable to work on a regular and sustained basis, due to the combination of impairments of gout, cervical myelopathy, severe neck-related arthritis, chronic pain, and severe damage to his shoulder, bilateral wrist, and hand caused by gout and was, therefore, totally disabled. (Doc. 15, p. 2.)

### III. Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

**IV.     Medical Opinions**

Dr. Erick Bournigal, Plaintiff's treating physician, offered three opinions pertaining to Plaintiff's condition in this case. Dr. Bournigal opined that 1) prior to September 26, 2011, Plaintiff was totally disabled due to active arthritis; 2) Plaintiff is capable of performing less than the full range of sedentary work and can walk no more than 200 feet without stopping to rest; and 3) Plaintiff suffered those limitations in 2009. (Doc. 9-10, p. 151.) Plaintiff avers that the ALJ erred by according no weight to Opinions 1 and 3, and that ALJ Furcolo's conclusion that Plaintiff was not disabled prior to September 26, 2011 is not supported by substantial evidence.

In support of his argument, Plaintiff contends the ALJ's findings as to Dr. Bournigal's opinions are contradictory, because ALJ Furcolo accorded "great weight" to Dr. Bournigal's opinion that Plaintiff could perform less than the full range of sedentary work and could walk no more than 200 feet without stopping for rest, whereas the ALJ accorded "no weight" to Dr. Bournigal's opinion that Plaintiff was totally disabled due to active arthritis prior to September 26, 2011 and that Plaintiff had suffered from that condition since 2009. (Doc. 14, p. 14.) In addition, Plaintiff argues that the personal activities in which he engaged prior to September 26, 2011 did not constitute substantial evidence justifying the ALJ's decision to accord Dr. Bournigal's opinion no weight. Finally, Plaintiff avers that the ALJ failed to rely on any medical documents or evidence in reaching his conclusion that Plaintiff was not disabled prior to September 26, 2011. Plaintiff maintains that ALJ Furcolo further erred by failing to contact Dr. Bournigal personally to clarify his medical opinion and should have ordered that Plaintiff undergo a consultative evaluation before according no weight to Dr. Bournigal's opinion.

6

The Commissioner asserts substantial evidence supports the ALJ's rejection of two of Dr. Bournigal's three opinions, and that the ALJ applied the proper legal standards in reaching his decision. Specifically, the Commissioner asserts that 1) the ALJ properly considered Plaintiff's medical records prior to rejecting Dr. Bournigal's opinion; 2) Dr. Bournigal's treatment records do not support his opinion that Plaintiff suffered disabling limitations prior to September 26, 2011; 3) Dr. Bournigal's opinion that Plaintiff was disabled prior to September 26, 2011 is inconsistent with the record as a whole; and 4) the ALJ's decision to accord "great" weight to Dr. Bournigal's April 2013 opinion is consistent with his decision to accord "no weight" to Dr. Bournigal's June 2014 opinion.[1] (Id. at pp. 6–9.) Finally, the Commissioner argues that the ALJ was not required to contact Dr. Bournigal to clarify his medical opinion because substantial evidence on record supported ALJ Furcolo's decision.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

---

[1] Specifically, Dr. Bournigal opined in April 2013 that Plaintiff could perform less than the full range of sedentary work and could walk no more than 200 feet without stopping to rest. In June 2014, Dr. Bournigal opined that Plaintiff had been suffering from those limitations since 2009. The ALJ accorded Dr. Bournigal's first opinion great weight, but accorded the latter opinion no weight. (Doc. 9-2, p. 21.)

7

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

As to Dr. Bournigal's first opinion—that Plaintiff was totally disabled prior to September 26, 2011 due to active arthritis—ALJ Furcolo stated with particularity that he accorded "no weight" to Dr. Bournigal's opinion. Furthermore, ALJ Furcolo clearly articulated the reason he accorded that opinion no weight, stating that the opinion was a legal conclusion reserved to the Commissioner. (Doc. 9-2, p. 21.) See Lewis, 125 F.3d at 1440 ("[W]e are concerned here with the doctors' evaluations of [Plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition."). ALJ Furcolo further noted that Dr. Bournigal articulated no function-by-function limitations in reaching that opinion which could be analyzed against the evidence to assess its probative value. (Doc. 9-2, p. 21.)

Next, ALJ Furcolo stated with particularity that he accorded "no weight" to Dr. Bournigal's opinion that Plaintiff's disabling limitations existed prior to September 26, 2011. (Id. at p. 22.) The ALJ clearly articulated multiple reasons for his failure to accord this opinion no weight, observing that Dr. Bournigal's findings prior to September 2011 were minimal and that the claimant had demonstrated only swollen wrists and a solitary swollen finger joint during that period.[2] (Id.) In addition, ALJ Furcolo noted that, while Plaintiff alleged "significant upper extremity dysfunction," Plaintiff "told a physician that his arm tingling and pain had no effect on his ability to perform household activities" on August 2, 2011. (Id. at p. 20.) The ALJ also noted that, prior to September 26, 2011, Plaintiff 1) felt well enough to plan a fishing trip to Alaska in June of 2010, 2) chose not to fill prescriptions for gout flare ups prior to 2011; and 3) voluntarily chose to consume alcohol prior to September 26, 2011—an activity which exacerbated his conditions.

In providing these reasons for his decision to accord no weight to the two opinions of Dr. Bournigal discussed above, ALJ Furcolo provided specific examples demonstrating his reasoning. Accordingly, ALJ Furcolo clearly articulated his conclusion that these opinions were not bolstered by the evidence and that the evidence supported a finding contrary to Dr. Bournigal's opinions. Thus, the ALJ had "good cause" to give no weight to Dr. Bournigal's opinions regarding Plaintiff's condition prior to September 26, 2011.

---

[2] ALJ Furcolo similarly accorded no weight to the medical opinions of state agency medical experts, who opined that Plaintiff could perform light work in 2012 and 2013, noting that, as of September 26, 2011, Plaintiff "has documented radiculopathy and his physicians have recommended a four-level spinal fusion because his back impairment is so severe. In addition to his back impairment, which alone justifies limiting the [plaintiff] to sedentary, he has severe gout in all extremity joints . . . that is well documented by objective findings." (Doc. 9-2, p. 22.)

9

As ALJ Furcolo met the legal requirements for weighing the opinions of Plaintiff's medical sources, his determination to accord no weight to these opinions is supported by substantial evidence. This enumeration of error is, therefore, without merit.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Court **AFFIRM** the decision of the Commissioner and **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The

Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 31st day of August, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA